1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DAVID MUGOMOKE

12              Plaintiff,                    Civ. No. 2:10-CV-02166 KJM DAD
            vs.
13                                            ORDER
     SUSAN CURDA, et al.,
14
                Defendants.
15   _____/

16          Plaintiff David Mugomoke ("Mugomoke") seeks a writ of mandamus to compel

17   the Department of Homeland Security to adjudicate his Application to Register Permanent

18   Resident or Adjust Status ("I-485"), filed nearly seven years ago.  Plaintiff seeks a declaration

19   that defendants' delay in adjudicating his application has been unreasonable and in violation of

20   defendants' obligations under the Immigration and Nationality Act (INA). Defendants have filed

21   a motion to dismiss this action for lack of subject matter jurisdiction under the Administrative

22   Procedure Act (APA), 5 U.S.C. §§ 701 and 706,[1] and the INA, 8 U.S.C. §§ 1252(g) and

23   1252(a)(2)(B)(ii). In the alternative, defendants have moved for summary judgment on the

24   /////

25   _____

26   [1] Unless otherwise stated, all statutory references are to the most current official version
     of the United States Code.

grounds that there are no genuine issues of material fact and any delay is reasonable under the

APA, 5 U.S.C. §§ 555(b) and 706(1). Defendants' motion came on for hearing on July 27, 2011.

   For the reasons set forth below, the court denies defendants' motions.

I.  <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

   Plaintiff David Mugomoke, a Rwandan citizen, was granted asylum in April

2004. Compl. ¶ 15, ECF No. 1. An office clerk for the Rwandan Army's Chief of Staff, he came

across a list of names of individuals suspected of disloyalty to the Rwandan government. *Id.* ¶¶

16–18. With the help of a relative who was a major in the Rwandan Patriotic Front (RPF),

Mugomoke leaked this information to the individuals under suspicion, prompting those

individuals to flee the country. *Id.* ¶ 18. Upon discovery, the government arrested Mugomoke,

assaulted him, and threatened to kill him. *Id.* ¶ 19. He fled Rwanda and subsequently entered the

United States on a student visa in 2003. *Id.* ¶¶ 19–20. During the Rwandan Civil War,

Mugomoke was a member of the Rwandan Patriotic Army (RPA), which broke off from the

RFA following the war. *Id.* ¶ 21. The United States classifies the RPF and RPA as Tier III

terrorist organizations. *Id.* According to Mugomoke, however, the Tier III label only applies to

organizations that are "currently engaged in 'terrorist activity'" and that the purpose of the

"category was to capture newly emergent groups"; thus the RPA should not be categorized as a

Tier III organization. *Id.* ¶ 22.

   On May 5, 2005, Mugomoke filed an Application to Register Permanent

Residence or Adjust Status ("I-485") with the United States Citizenship and Immigration Service

(USCIS). *Id.* ¶ 23. He appeared for biometrics appointments on October 6, 2005 and February

27, 2007. *Id.* ¶¶ 24 & 26. On May 22, 2007, he received a request for evidence related to his I-

485 application. *Id.* ¶ 27. Between February 20, 2007 and December 1, 2009, he contacted

USCIS seven times to inquire about the status of his I-485 application, including by making an

inquiry to the USCIS's ombudsman to seek assistance on his "stalled application." *Id.* ¶¶ 25, 28,

29, 30–31, 34. He also contacted Senator Dianne Feinstein's office on two separate occasions for

assistance with his application. *Id.* ¶¶ 32, 35. According to the Senator's office, the USCIS had put the application "in abeyance pending the release of regulations from the Department of Homeland Security," and that the USCIS "cannot speculate as to when these regulations will be released." *Id.* ¶ 35; Letter from Jessica Hartzell, Constituent Servs. Rep., Offices of Sen. Dianne Feinstein, to David Mugomoke (May 8, 2009), Compl. Ex. 10, ECF No. 1-4. In response to Mugomoke's second letter, the Senator's office informed him that the USCIS cannot expedite cases held in accordance with 8 U.S.C. § 212(a)(3)(B), "nor can they be removed from that category until they have been thoroughly reviewed." Compl. ¶ 35; Letter from the Office of Sen. Dianne Feinstein, to David Mugomoke (Feb. 26, 2010), Compl., Ex. 13, ECF No. 1-4.

Mugomoke alleges that his application, now over six years old, has taken more than the "expected four month processing time for the adjudication of an I-485 application." Compl. ¶ 36. Mugomoke supports the four-month time line by referencing the USCIS's website, which states that the processing times for I-485 applications based on grants of asylum at the "USCIS National Goal," the "USCIS National Average," and the "Nebraska Service Center" are all four months; the latter is the center handling Mugomoke's application. Compl. ¶ 36; Compl. Ex. 1., ECF No. 1-1. Mugomoke alleges that defendants have not adhered to their own processing times, resulting in delays in processing his application, and that defendants have sufficient information to adjudicate his application. Compl. ¶¶ 37–38. Mugomoke goes on to allege that "he has been greatly damaged by the failure of Defendants to act in accordance with their duties under the law," and that because of these failures, he cannot obtain legal permanent residence and thus "cannot travel or work without restrictions." *Id.* ¶ 39. He further alleges that the delay in approving his application prevents him from accruing time toward eligibility for naturalization and delays "his obtainment of the rights and privileges enjoyed by citizens of the United States." *Id.* ¶ 39.

Mugomoke alleges that the delays are unlawful and seeks mandamus and declaratory relief, requesting that the court (1) assume jurisdiction over the matter, (2) order the

1   USCIS to submit an expedited request to the FBI to expedite processing his background check,

2   (3) order the USCIS to schedule an I-485 interview and finish adjudicating his application within

3   60 days of the order, (4) declare the alleged delay in adjudicating his application as unreasonable

4   and in violation of the INA and associated regulations, (5) award him reasonable costs and

5   attorneys' fees, and (6) "[g]rant such further relief as the Court deems just and proper." *Id.*

6   ¶¶ 49–50.

7         The government notes that Mugomoke has admitted to participating in the RPA

8   from April 1994 to March 2001. Def. Mot. to Dismiss, Mot. for Summ. J. ( Mot.), ECF No. 23;

9   Def. Ex. 3, ECF No. 23-2. According to the government, until the RPA/RPF took control of the

10   Rwandan government in July 1994, "the RPA met the definition of a Tier III undesignated

11   terrorist organization at 8 U.S.C. § 1182(a)(3)(B)(vi)(III)." Mot. at 2 n.1. The INA allows the

12   Secretary of the Department of Homeland Security (Secretary), in her discretion, to adjust a

13   lawful asylee's status to permanent residence status where the asylee has been physically present

14   in the United States for at least one year and "[is] otherwise eligible." Mot. at 4; 8 U.S.C.

15   §§ 1159(b) & (b)(1).

16         The government argues that belonging to a terrorist organization as defined in 8

17   U.S.C. §§ 1182(a)(3)(B) (vi)(I)–(III) and "receiving military training from any organization that,

18   at the time the training was received, was designated a terrorist organization," are grounds for

19   inadmissibility for adjustment. Mot. at 4; 8 U.S.C. §§ 1182(a)(3)(B)(i)(I)–(X). While aliens who

20   engage in such terrorist activity are inadmissible, the Secretary has the authority to exempt both

21   individuals and organizations. Mot. at 5. In May 2005 and December 2007, Congress passed

22   legislation that restricted the Secretary's authority to make such terrorism-related exemptions.[2]

23   *Id.* In response, the USCIS "instructed adjudicators to hold cases that could benefit from the

24

25

26

---

[2] REAL ID Act, Pub. L. No. 109 13, Title II, 119 Stat. 231, 306 (May 11, 2005) (codified at 8 U.S.C. § 1103); Consolidated Appropriations Act of 2008, Pub. L. No. 110-161, Div. J, Title VI, §§ 691(a)–(c), 121 Stat. 2364, 2365 (Dec. 26, 2007) ("CAA") (codified as amended at 8 U.S.C. § 1182(d)(3)(B)(i)).

1   Secretary's future exercise of discretion." *Id.*; Memorandum from Jonathan Scharfen, Deputy

2   Dir., USCIS, to Assoc. Dirs. of USCIS (Mar. 28, 2008), Def. Ex. 13, ECF No. 23-4. USCIS

3   placed Mugomoke's application in abeyance pending a favorable exercise of the Secretary's

4   discretion instead of denying his adjustment application outright. Mot. at 5–6.

5   II.  <u>DISCUSSION</u>

6        A.  <u>Motion to Dismiss</u>

7          Defendants have moved to dismiss Mugomoke's claims on the grounds that the

8   court lacks subject matter jurisdiction. Specifically, defendants assert that 8 U.S.C.

9   §§ 1252(a)(2)(B)(ii) and 1252(g) bar jurisdiction and because the decision on the adjustment

10   application is discretionary, jurisdiction does not exist under the APA or the Mandamus and

11   Venue Act (MVA), 28 U.S.C. § 1361. Mot. at 7.

12        1.  Standard of Review

13          The party seeking to invoke the jurisdiction of the federal court has the burden of

14   establishing that jurisdiction exists. *Ass'n of Am. Medical Colleges v. United States*, 217 F.3d

15   770, 778–79 (9th Cir. 2000). A Rule 12(b)(1) motion to dismiss for lack of jurisdiction may be

16   either facial, where the inquiry is confined to the allegations in the complaint, or factual, where

17   the court is permitted to look beyond the complaint to extrinsic evidence. *Wolfe v. Strankman*,

18   392 F.3d 358, 362 (9th Cir. 2004). When the motion constitutes a factual attack, "no presumptive

19   truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will

20   not preclude the trial court from evaluating for itself the merits of jurisdictional claims."

21   *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). Where the

22   jurisdictional issue is separable from the merits of the case, the district court may hear evidence

23   regarding jurisdiction and rule on that issue prior to trial, resolving factual disputes where

24   necessary. *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983).

25   /////

26   /////

1    2. Analysis

2         a.  Jurisdiction Under 8 U.S.C. § 1252(g)

3         Defendants rely on *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S.

4    471, 482 (1999), in arguing that 8 U.S.C. § 1252(g) bars jurisdiction over delays in processing

5    I-485 applications. Mot. at 7. Section 1252(g) states:

> Except as provided in this section and notwithstanding any other
> provision of law (statutory or nonstatutory), including section 2241
> of Title 28, or any other habeas corpus provision, and sections
> 1361 and 1651 of such title, no court shall have the jurisdiction to
> hear any cause or claim by or on behalf of any alien arising from
> the decision or action by the Attorney General to commence
> proceedings, adjudicate cases, or execute removal orders against
> any alien under this chapter.

11   8 U.S.C. § 1252(g). In *American-Arab*, the Supreme Court held that § 1252(g) bars review of the

12   Attorney General's discretion to defer commencement of a deportation hearing. *American-Arab*,

13   525 U.S. at 482. In so doing, the Supreme Court construed the statute to only apply to very

14   narrow, specific circumstances, stating that "§ 1252(g) applies to only a limited subset of

15   deportation claims." *Id.* at 487. I-485 decisions, on the other hand, do not fall within the narrow

16   definition of § 1252(g) nor do they implicate the policy purpose behind § 1252(g). *See id.* at 485

17   ("Section 1252(g) was directed against a particular evil: attempts to impose judicial constraints

18   upon prosecutorial discretion."). The Ninth Circuit supports the conclusion that § 1252(g) only

19   narrowly applies to the context of removal proceedings. *Wong v. United States*, 373 F.3d 952,

20   964 (9th Cir. 2004) ("the [*American-Arab*] Court cautioned that we must be careful not to read

21   broadly language in the INA affecting court jurisdiction that is subject to a "much narrower

22   interpretation. . . . Following [*American-Arab*], we have narrowly construed § 1252(g)."").

23   Making a decision on an I-485 application does not implicate the agency's discretion to initiate

24   removal proceedings, and thus § 1252(g) does not apply.

25         Other courts addressing similar cases have found that § 1252(g) does not bar

26   federal court jurisdiction over actions regarding delayed I-485 applications by individuals

6

1   inadmissible because of their association with Tier III terrorism-related organizations. *See, e.g.*,

2   *Islam v. Heinauer*, 2011 WL 2066661, at *3 (N.D. Cal. May 25, 2011); *Hassane v. Holder*, 2011

3   WL 2425993, at *3 (W.D. Wash. June 11, 2010); *Sultan v. Roark*, 2010 WL 1992195, at *2

4   (E.D. Cal. May 13, 2010); *Khan v. Scharfen*, 2009 WL 55939, at *3–4 (N.D. Cal. Apr. 6, 2009);

5   *Ahmed v. Scharfen*, 2009 WL 55939, at *5 (N.D. Cal. Jan. 7, 2009). This court also finds that

6   § 1252(g) does not preclude jurisdiction. Defendants' motion to dismiss in this respect is denied.

7                           b.  Jurisdiction Under 8 U.S.C. § 1252(a)(2)(B)(ii)

8               Defendants also move to dismiss Mugomoke's claims on the ground that

9   § 1252(a)(2)(B)(ii) bars the court from reviewing whether the agency has unreasonably delayed

10  a decision on Mugomoke's adjustment application. Mot. at 9–12. Section 1252(a)(2)(B)(ii) states

11  that no court shall have jurisdiction to review:

12          . . . any other decisions or action of the Attorney General or
              Secretary of Homeland Security the authority for which is
13          specified under this subchapter to be in the discretion of the
              Attorney General or the Secretary of Homeland Security, other
14          than the granting of relief under section 1158(a) of this title.

15  8 U.S.C. § 1252(a)(2)(B)(ii). Section 1252(a)(2)(B)(ii) bars the court from reviewing a final

16  agency decision on an adjustment application, not from reviewing an agency's unreasonable

17  delay in making a decision. According to *Kucana v. Holder*, ___ U.S. ___, 130 S. Ct. 827, 829

18  (2010), "both clauses [of § 1252(a)(2)(B)] convey that Congress barred court review of

19  discretionary decisions only when Congress itself set out the Attorney General's discretionary

20  authority in the statute." *See also id.* at 839 ("Any lingering doubt about the proper interpretation

21  of § 1252(a)(2)(B) would be dispelled by the familiar principle of statutory construction: the

22  presumption favoring judicial review of administrative action."); *Wong*, 373 F.3d at 963

23  ("§ 1252(a)(2)(B)(ii) precludes jurisdiction only over decisions as to which discretionary

24  authority is 'specified' by statute, not all discretionary decisions."). In *Spencer Enterprises*, *Inc.*

25  *v. United States*, 345 F.3d 683 (2003), the Ninth Circuit stated that "[e]ven if a statute gives the

26  /////

1  Attorney General discretion, [] the courts retain jurisdiction to review whether a particular

2  decision is *ultra vires* the statute in question." *Id.* at 689.

3          While the Secretary has discretion to decide the outcome of an I-485 application,

4  the authority to not act on an application is not conferred by any statute.  Thus a failure to act on

5  an I-485 application falls within the APA's default rule: "With due regard for the convenience

6  and necessity of the parties or their representatives and within a reasonable time, each agency

7  shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b).

8          Other courts have found that 8 C.F.R. § 103.2(b)(18) specifically imposes a non-

9  discretionary duty "with a framework for both the timing and manner of withholding

10  adjudication of adjustment of residency status." *Dong*, 513 F. Supp. 2d at 1166. "Title 8 C.F.R.

11  § 103.2(b)(18) is not a blanket authority to indefinitely withhold adjudication for adjustment of

12  status. Section 103.2(b)(18) allows for the withholding of adjudication, for specified intervals,

13  upon compliance with specific procedural requirements. Absent such compliance, judicial

14  review is not precluded." *Id.* at 1168. Furthermore, 8 C.F.R. § 245.2(a)(5)(i) states that an I-485

15  applicant "shall be notified of the decision of the director and, if the application is denied, the

16  reasons for denial." *Gianni v. Curda*, No. 2:07-cv-1478 GEB KJM, 2008 WL 479991, at *2

17  (E.D. Cal. Feb. 19, 2008).

18          Under either the default rule of § 555(b) or a non-discretionary duty imposed by

19  8 C.F.R. § 245.2(a)(5)(i) and 8 C.F.R. § 103.2(b)(18), the USCIS has a duty to decide I-485

20  applications. Section 1252(a)(2)(B)(ii) does not withdraw the court's jurisdiction to compel

21  defendants to make a decision if that decision is unlawfully withheld. *See* 5 U.S.C. § 706(1)

22  (granting courts jurisdiction to "compel agency action unlawfully held or unreasonably

23  delayed").

24          A number of other district courts have reached similar results. *See Al-Rifahe v.

25  Mayorkas*, 776 F. Supp. 2d 927, 931–33 (D. Minn. 2011); *Islam*, 2011 WL 2066661, at **2–3;

26  *Hassane*, 2010 WL 2425993, at *2; *Sultan*, 2010 WL 1992195, at *2; *Khan*, 2009 WL 941574,

1   at **3–4; *Ahmed*, 2009 WL 55939, at *5; *but see, e.g.*, *Singh v. Napolitano*, 710 F. Supp. 2d 123,

2   129–32 (D.D.C. 2010) (finding that § 1252(a)(2)(B)(ii) strips federal courts of jurisdiction to

3   review whether delay of an I-485 application was unreasonable).

4         This court concludes that because the agency is required to make a decision on an

5   I-485 application, inaction falls outside the scope of the agency's discretion and

6   § 1252(a)(2)(B)(ii) does not bar jurisdiction over Mugomoke's claim. The court also denies

7   defendants' motion to dismiss in this respect.

8              c.  Jurisdiction Under the MVA

9         Defendants further contend that the court does not have jurisdiction under the

10   Mandamus and Venue Act, 28 U.S.C. § 1361 ("MVA").

11         "Mandamus is an extraordinary remedy and is available to compel a federal

12   official to perform a duty only if: (1) the individual's claim is clear and certain; (2) the official's

13   duty is non-discretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3)

14   no other adequate remedy is available." *Kildare v. Saenz*, 325 F.3d 1078, 1084 (9th Cir. 2003).

15   "If the Court has jurisdiction [under] either the APA or the MVA, it need not address jurisdiction

16   with respect to the other statute." *Sultan*, 2010 WL 1992195 (*quoting Saini*, 553 F. Supp. 2d at

17   1178 (internal quotations omitted)). Because the court has found it has jurisdiction under the

18   APA, it need not decide the question under the MVA.  *But see Dong v. Chertoff*, 513 F.Supp.2d

19   1158, 1167 (N.D. Cal. 2007) (jurisdiction appropriate under both APA & MVA).

20        B.  <u>Motion For Summary Judgment</u>

21         Defendants have moved in the alternative for summary judgment, arguing that the

22   delay in adjudicating Mugomoke's application does not violate § 706(1) of the APA as a matter

23   of law. According to defendants, even if the APA permits judicial review over agency action that

24   is unreasonably delayed or not completed within a reasonable time, several courts "have found

25   that a delay incident to terrorism related holds is reasonable in light of the CAA [(Consolidated

26   Appropriations Act)]." Mot. at 15–16 (*citing Parra v. Dep't of Homeland Sec.*, 2009 WL

528622, at *4 (M.D. Fla. Mar. 2, 2009), *Ali v. Gonzales*, 08-1731, slip op. at 2 (N.D. Cal. Mar. 23, 2009) (unpublished), *Khan v. Scharfen*, 2009 WL 928282, at *1 (N.D. Cal. Apr. 6, 2009), *Khan*, 2009 WL 941574, at *8–9, *and Singh v. Heinauer*, 2008 WL 5110862, at *3 (W.D. Wash. Dec. 3, 2008)).

    1.  Standard for Summary Judgment

    A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The "threshold inquiry" is whether "there is any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[3]

    The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts"). Moreover, "the requirement is that there be no *genuine* issue of *material* fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48 (emphasis in original).

    [3] Rule 56 was amended, effective December 1, 2010. However, it is appropriate to rely on cases decided before the amendment took effect, as "[t]he standard for granting summary judgment remains unchanged." FED. R. CIV. P. 56, Notes of Advisory Comm. on 2010 Amendments.

1    In deciding a motion for summary judgment, the court draws all inferences and

2    views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at

3    587–88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a

4    whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine

5    issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv.*

6    *Co.*, 391 U.S. 253, 289 (1986)).

7    2.  Analysis

8    The court applies a six-part test to determine whether an agency's delay in

9    making a decision is reasonable under § 706(1): (1) whether a "rule of reason" governs the time

10   an agency takes to make a decision, (2) whether Congress has provided content for the rule of

11   reason in the enabling statute, such as a timetable or other expectation of the speed with which it

12   expects an agency to proceed, (3) whether human health or welfare is at stake, (4) whether

13   expediting the delayed agency action impacts activities of a higher or competing priority, (5) the

14   nature and extent of the interests prejudiced by the delay, and (6) the court need not find any

15   impropriety or bad faith behind the delay to find it unreasonable. *Telecomm. Research & Action*

16   *Ctr. v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*").

17   The second factor can be dispensed with readily, as there is no congressional

18   timetable for I-485 adjudications. *See* 9 U.S.C. § 1159(b); 8 U.S.C. § 1182(a)(3)(b)(I). The

19   agency therefore must adjudicate Mugomoke's application in a reasonable amount of time. *Kahn*,

20   2009 WL 941574, at *8 (citing 5 U.S.C. § 555(b)).

21   a.  First Factor: Rule of Reason

22   Addressing the first factor, defendants assert that the CAA, in giving the

23   Secretary the authority to grant exceptions to § 1182(a)(3)(B), taken together with the USCIS's

24   memoranda directing adjudicators to put a hold on adjustment applications, constitutes a rule of

25   reason for the delay. Mot. at 17. Furthermore, defendants argue the delay is not arbitrary or the

26   result of generic processing delays, but rather the result of the USCIS's decision to hold

1  applications pending the exemption determination, and that this exemption process is naturally a

2  deliberative and lengthy one. *Id.*

3          Specifically, defendants state that the exemption procedure requires "significant

4  interagency consultation between the Secretary of State, the Secretary of Homeland Security and

5  the Attorney General. This is a lengthy process and various factors—national security,

6  humanitarian and foreign policy—must be weighed." Mot. at 17. Defendants do not explain how

7  these concerns would be undermined by expediting an I-485 application. While the government

8  does cite a number of examples of exemptions granted since 2006, these prior exemptions

9  provide no indication as to when Mugomoke might be granted an exemption, if at all.[4]

10          Defendants' national security arguments are not directly relevant to the issue in

11  this case. Mugomoke stated his affiliation with the RPA in his asylum application, yet asylum

12  was still granted. Regardless of the outcome of the I-485 adjudication, the government will still

13  retain the power and ability to remove Mugomoke from the country should he pose a threat. The

14  government does not argue that Mugomoke would lose his asylee status upon denial of his I-485

15  application. Mugomoke seeks a decision on his I-485 application without requesting a terrorism-

16  related exemption; whether the agency itself considers exemption is within its discretion. But for

17  defendants to hold the application indefinitely in case they might, at some unspecified point in

18  the future, consider an exemption does not constitute a "rule of reason" that allows this court to

19  find the delay reasonable.

---

20

21      [4] Defendants state that "from mid-2006 to December 2010, in fact, USCIS granted 13,334
exemptions in terrorism-related inadmissibility cases," and that "[b]etween June and December

22  2010, USCIS released over 3,400 cases from adjudicatory holds because the Secretary exercised
a grant of her discretionary authority to exempt a terrorism-related inadmissibility ground."

23  Def.'s Reply at 8. These figures do not assist the court's reasonableness analysis. While
defendants have demonstrated that some groups and individuals receive exemptions, they

24  provide no explanation of the circumstances surrounding that process and give no indication
when or even if Mugomoke has any possibility of joining the numbers they cite. As for group

25  exemptions, defendants name three Iraqi groups given an exemption on October 19, 2009. *Id.*,
Attach. 1, ECF No. 30-1. That wider foreign policy concerns influence the prioritization of

26  exemption considerations seems reasonable, but does not confirm that the RPA will soon (or
ever) become a priority on the exemption agenda.

1    A number of other district courts have found a long delay in adjudicating an I-485

2 application to be unreasonable. *See Al Karim v. Holder*, 2010 WL 1254840, at *4 (D. Colo. Mar.

3 29, 2010) (six-year delay unreasonable); *Al-Rifahe*, 776 F. Supp. 2d at 938 (thirteen-year delay

4 unreasonable); *Al Shamsawi v. Holder*, 2011 WL 1870284, at *4 (six-year delay unreasonable).

5 However, length of delay alone is not dispositive; the reasonableness determination is a fact-

6 specific inquiry. *Gelfter v. Chertoff*, 2007 WL 90238, at *2 (N.D. Cal. Mar. 22, 2007). In *Al*

7 *Karim*, the court based its unreasonableness finding in part on the FBI's unjustified delay in

8 completing the plaintiff's background check. *Al Karim*, 2010 WL 1254840, at *3. In *Al-Rifahe*,

9 the plaintiff's I-485 application was already over ten years old when the USCIS issued its

10 memorandum instructing the adjudicators to withhold I-485 decisions for individuals who would

11 be found inadmissible due to associations with Tier III organizations. *Al-Rifahe*, 776 F. Supp. 2d

12 at 929–30. In that case, the plaintiff was informed that the Tier III group applicable to him, the

13 Iraqi National Congress, was under consideration for an exemption. *Id.* at 938. The court

14 emphasized that a dispute of material fact existed; thus the defendants were not entitled to

15 summary judgment on the legal issues in question. *Id.* at 936.

16    In *Al Shamsawi*, the court held that a six-year delay in adjudicating an I-485

17 application, based on the same memorandum placing a hold on Mugomoke's application, had

18 become indefinite. 2011 WL 1870284, at *2. As in *Al Shamsawi*, defendants here have made no

19 showing that they might adjudicate Mugomoke's application at any particular time in the future.

20    b.  Third & Fifth Factors: Human Health or Welfare And Prejudice

21    Regarding the third and fifth factors, defendants state that "[a]lthough Mr.

22 Mugomoke alleges that the delay has caused him harm, that delay inures to his benefit," and that

23 the application would be denied were it adjudicated now. Mot. at 18 (internal citations omitted).

24 Defendants go on to state that "[a]s an asylee, he remained [sic] entitled to live and work in the

25 United States and is safe from persecution in Rwanda." *Id.* (internal citations omitted).

26 Defendants do not indicate that a denial of Mugomoke's application would result in his losing

his current asylee status.   Meanwhile, Mugomoke faces restrictions on travel, employment, and cannot accrue credit toward naturalization as he awaits a decision on his I-485 application; in light of these restrictions, defendants have not shown an absence of prejudice from the delay.   In a number of similar cases, courts have rejected defendants' apparent concern for plaintiffs awaiting decisions on their I-485 applications. *See Singh v. Still*, 470 F. Supp. 2d 1064, 1069 (N.D. Cal. 2007) (finding that health and human welfare are at stake when delaying adjudication of an I-485 application); *Al Karim*, 2010 WL 1254840, at *4 (rejecting similar arguments and finding that the consequences of delayed adjudication of an I-485 application implicate the applicant's welfare); *Kashkool v. Chertoff*, 553 F. Supp. 2d 1131, 1145 (D. Ariz. 2008) (finding a six-year delay unreasonable and that delays in decisions on legal immigration status are detrimental to human welfare). The court presumes Mugomoke himself knows the potential consequences should his application be denied. The fact that he wishes to have the application adjudicated now also supports an inference that the harm of delay is not remote or insignificant. Defendants have not satisfied their burden regarding these factor.

c.  Fourth Factor: Impact on Compelling Priorities

In addressing what effect expediting a decision for Mugomoke would have on agency activities of a higher or competing priority, defendants argue that "8 U.S.C. 1252(a)(2)(B)(ii) bars jurisdiction to review adjustment of status determinations since they are committed to agency discretion"; thus, "requiring Defendants to expedite adjudication would intrude on agency discretion to determine adjustment applications." Mot. at 19 (internal citations omitted). The court has determined that the agency is lawfully required to adjudicate Mugomoke's application and that the APA allows the court to compel the agency to act should the agency fail to do so. If the only effect of expediting the application is the loss of an authority that the court has determined is *ultra vires*, this factor does not militate in defendants' favor.

/////

/////

e. Sixth Factor: Impropriety or Bad Faith

Moving to the last factor, Mugomoke does not allege any impropriety ad thus there is no factual dispute regarding the application of this factor.  In any event, "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." 750 F.2d at 80.

f. Conclusion

The record before the court does not support a finding that the factors articulated in the TRAC case weigh in defendants' favor. The court is not persuaded by defendants' argument that delay inures to Mugomoke's benefit. The important policy considerations behind carefully examining exemptions are irrelevant to the determination of whether the delay is unreasonable, absent any showing in the record that the government might actually consider an exemption for Mugomoke. The record provides no support for finding that expediting the delayed action would have any effect on agency actions of a higher or competing priority, other than the unsupported argument that an order compelling the agency to act would intrude on agency discretion.

Mugomoke must bear the hardships associated with an indefinite delay that arises from the speculative possibility that defendants might consider exempting the RPA and thus perhaps, some day, might consider and maybe even approve his application. Although even a nearly seven-year delay on an I-485 application is not presumptively unreasonable, defendants have not shown that the delay here is not unreasonable.

IT IS THEREFORE ORDERED that:

1. Defendants' motion to dismiss is DENIED; and

2. Defendant's motion for summary judgment is DENIED.

/////

/////

/////

3. The parties are directed to file a status report within thirty days of the date of this order.

DATED:  January 12, 2012.

UNITED STATES DISTRICT JUDGE